1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA          .          Criminal No. 1:11cr119
                                  .
     vs.                          .          Alexandria, Virginia
                                  .          March 16, 2011
TERESA A. KELLY,                  .          10:00 a.m.
                                  .
            Defendant.            .
                                  .
.  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF PRE-INDICTMENT PLEA
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:              CHARLES F. CONNOLLY, AUSA
                                 United States Attorney's Office
                                 2100 Jamieson Avenue
                                 Alexandria, VA 22314
                                    and
                                 PATRICK F. STOKES, ESQ.
                                 ROBERT ZINK, ESQ.
                                 United States Department of Justice
                                 Criminal Division, Fraud Section
                                 1400 New York Avenue, N.W.
                                 Washington, D.C. 20005

FOR THE DEFENDANT:               ROBERT A. LEVENTHAL, ESQ.
                                 Leventhal & Slaughter
                                 111 North Orange Street, Suite 700
                                 Orlando, FL 32801
                                 and
                                 ALAN H. YAMAMOTO, ESQ.
                                 Law Office of Alan Yamamoto
                                 634 South Washington Street
                                 Alexandria, VA 22314

OFFICIAL COURT REPORTER:         ANNELIESE J. THOMSON, RDR, CRR
                                 U.S. District Court, Fifth Floor
                                 401 Courthouse Square
                                 Alexandria, VA 22314
                                 (703)299-8595

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1                    P R O C E E D I N G S

2                    (Defendant present.)

3          THE CLERK:  Criminal Case 11-119, United States of

4    America v. Teresa A. Kelly.  Would counsel please note their

5    appearances for the record.

6          MR. ZINK:  Your Honor, for the United States, Robert

7    Zink from the Fraud Section, Patrick Stokes, and Charles Connolly.

8          THE COURT:  Good morning.

9          MR. ZINK:  Good morning.

10          MR. LEVENTHAL:  Good morning, Your Honor.

11          MR. YAMAMOTO:  Good morning.  Alan Yamamoto and Robert

12    Leventhal for Ms. Kelly.

13          THE COURT:  All right.  And I've just granted your

14    motion to move Mr. Leventhal's admission pro hac vice.

15          MR. YAMAMOTO:  Thank you, Your Honor.

16          THE COURT:  All right?

17          Ms. Kelly, come up to the lectern.  The clerk is going

18    to issue an affirmation to you at this time.

19               TERESA ANN KELLY, DEFENDANT, AFFIRMED

20          THE COURT:  All right, Ms. Kelly, you have now taken a

21    promise to tell the truth in answering all of the Court's

22    questions.  If you should lie in answering any question, the

23    government could prosecute you for a new and separate crime called

24    perjury.  Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  For the record, what is your full name?

2          THE DEFENDANT:  Teresa Ann Kelly.

3          THE COURT:  And, Ms. Kelly, how old are you?

4          THE DEFENDANT:  Thirty-five.

5          THE COURT:  How much education have you completed?

6          THE DEFENDANT:  A few years of college.

7          THE COURT:  Do you have any problem reading, writing,

8  understanding, or speaking English?

9          THE DEFENDANT:  No.

10          THE COURT:  Are you a United States citizen?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Are you presently on probation or parole

13  from any other criminal matter?

14          THE DEFENDANT:  No.

15          THE COURT:  At this time, are you under the care of a

16  doctor for any physical or mental condition?

17          THE DEFENDANT:  No.

18          THE COURT:  Within the last 24 hours, have you taken any

19  medication, whether by prescription or over the counter?

20          THE DEFENDANT:  No.

21          THE COURT:  Are you at this time under the influence of

22  any alcohol or drugs?

23          THE DEFENDANT:  No.

24          THE COURT:  All right, Ms. Kelly, we have several

25  documents we need to review today in connection with your plea.

1    The first one has the title "Waiver of an Indictment."  I see what

2    appears to be your signature as well as that of your counsel on

3    the document and today's date.  Did you sign the waiver of

4    indictment?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Now, before you signed the waiver, did you

7    discuss it thoroughly with your counsel?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And did they explain to you that under the

10   laws and Constitution of the United States, you have a right to

11   require the federal prosecutors to go before a group of people

12   called a federal grand jury with the evidence the government has

13   developed concerning your being involved in a conspiracy to commit

14   various crimes against the United States?  Do you understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Now, a federal grand jury is made up of

17   anywhere from 16 to 23 ordinary citizens, and they are brought to

18   the court basically on a random basis, and what happens in the

19   grand jury process is that a federal prosecutor goes into the

20   grand jury room, and this is a secret proceeding, so that it's not

21   open to the public, and the prosecutor presents evidence to the

22   grand jury supporting the prosecutor's belief that a person may

23   have violated certain federal criminal laws.  The evidence can be

24   the testimony of witnesses, it can be documents, whatever evidence

25   the government feels it needs to present.

1          At the end of the presentation, if at least 12 members

2   of that grand jury are satisfied that the evidence presented

3   establishes probable cause to believe the person or persons have

4   committed the crime or crimes the government wants to charge, then

5   the grand jury issues a document called an indictment, and that is

6   normally how a felony-level criminal prosecution begins in our

7   court.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Now, that grand jury review process is

11  considered to be a way of protecting an individual's -- person's

12  rights, because it exists to make sure that a federal prosecutor

13  doesn't publicly charge somebody with serious criminal activity

14  without there being a genuine basis to support such an allegation.

15  Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  A person can give up her right to that grand

18  jury review process, and that would be done by signing a waiver of

19  indictment such as the one that you've signed.  The word "waiver"

20  in the law means to give something up, so by waiving indictment,

21  you're giving up that grand jury review process, and instead,

22  you're authorizing the prosecutors to come to court today and file

23  this conspiracy charge against you using a document called a

24  criminal information, and that information will not have been

25  tested by a grand jury.

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now, other than the plea agreement that you

4    have with the government, has anybody promised or suggested to you

5    that you might receive lighter -- a shorter sentence or more

6    favorable treatment by the Court if you would waive indictment?

7          THE DEFENDANT:  No.

8          THE COURT:  Has anyone put any force or pressure on you

9    to waive indictment today?

10          THE DEFENDANT:  No.

11          THE COURT:  Mr. Yamamoto, did you and your cocounsel

12   carefully go over this waiver with Ms. Kelly?

13          MR. YAMAMOTO:  Yes, Your Honor.

14          THE COURT:  Are you satisfied that Ms. Kelly is entering

15   her waiver in a knowing and voluntary fashion?

16          MR. YAMAMOTO:  Yes, Your Honor.

17          THE COURT:  All right, based on these answers to the

18   Court's questions, Ms. Kelly, I find that you've entered your

19   waiver with the advice of counsel and that you've done so in a

20   knowing and voluntary fashion, so the waiver is accepted by the

21   Court, and that allows the United States to file the following

22   charge against you by way of a criminal information.  I'm going to

23   just -- have you had a copy of this information before today?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And have you gone over it carefully with

1   your counsel?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And I'm not going to read the whole thing to

4   you, but the essence of it is as follows:  You're charged with

5   beginning on or about the year 2002 and continuing through in or

6   about August of 2009, in this district and elsewhere, conspiring

7   with at least one other person to commit the crimes of bank fraud,

8   wire fraud, and securities fraud.

9           And the criminal information then explains the ways and

10  means of the way in which the conspiracy was committed, and then

11  it lists one overt act, and that is that on or about January 6,

12  2009, you and other coconspirators caused Colonial Bank to wire

13  approximately $66,400,000 to LaSalle Bank in connection with the

14  purported purchase of three trades from TBW which were to be held

15  on Colonial Bank's books as securities purchased under agreements

16  to resell.  That's the overt act they've specified.

17          Now, to this criminal information, how do you want to

18  plead, guilty or not guilty?

19          THE DEFENDANT:  Guilty.

20          THE COURT:  All right.  Now, Ms. Kelly, before the Court

21  accepts your guilty plea, I'm going to go over with you in detail

22  the plea agreement that you have with the United States and the

23  statement of facts which is incorporated in that plea agreement.

24  If at any point this morning you should change your mind and

25  decide you do not want to plead guilty, you have a right to

1   withdraw your plea.

2           Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Now, there has been filed this morning a

5   plea agreement which is 15 pages long, and I see what appears to

6   be your signature at the very bottom of page 14.  Did you, in

7   fact, sign the plea agreement?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And did you sign it today?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Now, before you signed the plea agreement,

12  did you read it over for yourself word for word?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And approximately when did you first get a

15  copy or a draft of this plea agreement?

16          THE DEFENDANT:  More than a month ago.

17          THE COURT:  All right.  And when you first saw the plea

18  agreement -- since then, have changes been made to it, either to

19  it or the statement of facts?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  So the current version that you

22  signed which is in court today, you have read this particular

23  version for yourself word for word?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And have you had enough time to thoroughly

1  ask your counsel all the questions that you have about the plea

2  agreement?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have your attorneys answered your questions

5  to your satisfaction?

6          THE DEFENDANT:  Yes.

7          THE COURT:  As you stand in court this morning, do you

8  have any questions you want to ask me about the plea agreement?

9          THE DEFENDANT:  No.

10         THE COURT:  All right.  In the course again of this plea

11  hearing, if you should have a question, you know you have a right

12  to ask it.

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  All right.  I want you to turn to page 14,

15  and look above your signature.  There are two sentences that go

16  over some of what we've just done, but I want you to recognize

17  that they're in the plea agreement itself, and they go, "I have

18  read this plea agreement and carefully reviewed every part of it

19  with my attorney.  I understand this agreement and voluntarily

20  agree to it."

21         Do you see those two sentences?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Are they completely true?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Ms. Kelly, by telling the Court that you've

1   read the entire plea agreement and discussed it thoroughly with

2   counsel and that you understand the agreement and are voluntarily

3   agreeing to it, that means you will be bound by everything written

4   in these 15 pages even if I don't go over every paragraph or page

5   of the plea agreement in court with you today.  Do you understand

6   that?

7             THE DEFENDANT:  Yes.

8             THE COURT:  And the reason for that result is that the

9   plea agreement is really a written contract between you and the

10  United States government, and you're somebody with some business

11  background, so you know how contracts work, right?

12            THE DEFENDANT:  Um-hum.

13            THE COURT:  All right.  And you know therefore that when

14  a person has signed a written contract after carefully reviewing

15  it with counsel and she understands it when she signs it and she

16  signs it voluntarily, then that document becomes a binding legal

17  instrument, and you can't just walk into the court in a couple of

18  weeks and say, "You know, I really don't like what's on page 6.  I

19  want to change it."

20            You just can't do that.  Do you understand that?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Now, other than the plea agreement that's in

23  court this morning, do you have any side deals or side

24  understandings with any federal or state investigators, bank

25  examiners, SEC investigators, or any other types of law

1    enforcement officials or government attorneys concerning this

2    case?

3              THE DEFENDANT:  No.

4              THE COURT:  All right.  It's perfectly fine for you to

5    consult with counsel, but I want to just make sure that you

6    yourself are sure about that.

7              THE DEFENDANT:  Yes.

8              THE COURT:  No side deals?

9              THE DEFENDANT:  No side deals.

10             THE COURT:  And, counsel, I'll hear from both of you:

11   Is it your understanding there are no other deals or agreements on

12   behalf of your client?

13             MR. YAMAMOTO:  Yes, Your Honor.

14             MR. LEVENTHAL:  Yes, Your Honor.

15             THE COURT:  Yes?

16             MR. ZINK:  Yes, Your Honor.

17             THE COURT:  All right.  Then let's turn to page 1,

18   paragraph 1 of the plea agreement.  There it says you've agreed to

19   waive indictment, which you have just done, and to plead guilty to

20   the criminal information I just summarized for you.

21             Now, the conspiracy that you're charged with is brought

22   under Title 18 of the United States Code, section 371.  That is a

23   felony.  It exposes you to a possible maximum penalty of five

24   years' imprisonment followed by three years of -- up to three

25   years of supervised release.  You could be exposed to a fine of

1  either up to $250,000 or as an alternative fine not more than

2  greater than twice the gross gain or twice the gross loss from the

3  activity.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You could also be required to make full

7  restitution.  The restitution in this case has not yet been

8  determined, but it could be a very significant number.  Do you

9  understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  The supervised release portion of the

12 sentence does not begin until any period of imprisonment has been

13 served.  When a person is on supervised release, she is under the

14 control of a federal probation officer, and there may be

15 requirements to do certain things.

16         For example, in a financial crime, there's frequently a

17 requirement to make a certain minimum monthly payment towards the

18 restitution obligation.  That normally also involves the Court

19 imposing restrictions on a person's financial activity, requiring

20 full access by the Probation Office to any and all financial

21 records.

22         Those are just examples of some of the conditions that

23 are sometimes imposed, and I can't tell you the specific

24 conditions yet because I haven't seen the presentence report, but

25 what you need to understand clearly is that if you were to violate

1    any condition of supervised release, you could be punished by

2    being sent back to prison, and that could be for as long as the

3    period of supervised release, which is three years.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Parole is not available in the federal

7    system, which means any term of imprisonment must be served

8    entirely.  The Bureau of Prisons in some cases does have a way of

9    giving good time credit, but it's very minimal, and as a practical

10   matter, a defendant should be prepared to serve the entire

11   sentence that's imposed.  Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Now, when it comes time for

14   sentencing, the Court is going to be looking at many different

15   factors.  One factor will be the federal sentencing guidelines,

16   and these are addressed in paragraph 6 of your plea agreement, but

17   I first of all want to make sure you're clear as to how the

18   guidelines operate.

19             The Court needs to make two factual decisions before the

20   guidelines can be determined.  We first have to determine a

21   defendant's criminal history.  Criminal histories are divided into

22   six categories, each getting a number.  A No. I history would go

23   to somebody who's never been in trouble with the law or who has a

24   very minor record, and then as convictions, probation, or

25   supervised release violations and other problems occur in the

1    record, the score goes up, with a level VI being -- going to the

2    most serious offenders.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Then the Court must look at the offense

6    conduct.  Now, every federal crime has a basic number given to it

7    by the Sentencing Commission, and then depending upon the facts of

8    the case, that number can go up or down.

9              In paragraph 6 of the plea agreement, you and your

10   counsel and the government have agreed to certain facts that would

11   affect the guidelines.  I want you to understand that although

12   you-all are bound by what's in paragraph 6, neither the probation

13   officer who prepares the presentence report or this Court is in

14   any respect bound by what's in paragraph 6.  Do you understand

15   that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  However, in paragraph 6, you've

18   all agreed that the base offense level for the conduct in Count 1

19   would be a level 6, and then because more than 250 victims were

20   involved, that would -- and the conduct jeopardized the safety and

21   soundness of a financial institution, that could result in an

22   eight-level upward adjustment.

23             In paragraph 6.c, you've also agreed that sophisticated

24   means were used, and that would result in a two-level adjustment,

25   and that you would have been considered to be a supervisor of that

1   criminal activity, and if the Court made that finding, that would

2   be an additional two-level increase.

3          Paragraph 6.e provides that you've been of assistance to

4   the government at this point, and if you continue to accept full

5   responsibility, not only can you get a two-point level decrease to

6   the offense level, but, in fact, the government would move for you

7   to get a third level.  There may very well be other factors that

8   affect the score either up or down, and the Court may or may not

9   accept any or all of what's in paragraph 6.

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  But in the end, the Court will determine an

13   offense number, and then those two numbers, the criminal history

14   number and the offense number, will be put on the Sentencing

15   Guideline Table, and that establishes an advisory guideline range.

16   Now, the Court needs to consider that range but has the authority

17   to sentence above it or below it.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  The Court must also in determining the

20   appropriate sentence look at all of the factors in section 3553(a)

21   of Title 18, which means we're going to look in depth at your

22   personal background, your family situation, your employment

23   history, any medical issues that might apply to you, and we're

24   going to look, of course, at the need for deterrence, that is, do

25   you -- is there an indication from your record that you might do

1   the same type of activity in the future such that we have to

2   fashion the sentence to try to prevent that.

3           And an important element of the sentencing in this kind

4   of a case, which is basically a white collar fraud case, is to

5   make sure that a clear message is also sent out to the general

6   community that engaging in this kind of conduct results in

7   potential punishment as a way of deterring such conduct by others.

8           All those factors go into the mix in determining the

9   appropriate sentence, but in the end, the Court will determine the

10  sentence.  Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Now, I'm assuming that your counsel have

13  discussed sentencing potentials with you a great deal.  Most

14  lawyers do that, and that's really what most defendants are

15  interested in.  Is that a correct assumption?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And have they shown you a copy of the

18  guideline table with all the numbers on it?

19          THE DEFENDANT:  Yeah, we discussed the guidelines.

20          THE COURT:  All right.  What normally happens is an

21  attorney says, well, if the Court makes this finding, then here's

22  what the numbers are going to look like; if she makes that

23  finding, it's going to look this way, that kind of discussion.

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  What I want to make sure you

1  absolutely understand is no matter what your lawyers may have told

2  you they think your guideline scores will come out to be or if the

3  prosecutors or the investigators have given you their, their

4  thoughts about that or, for that matter, if anybody has talked to

5  you about the ultimate sentence they think you may be getting,

6  none of those discussions in any respect limit or bind the

7  Probation Office or this Court.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And so if at the sentencing hearing you

11 receive a sentence that is different from what you are expecting

12 or hoping for, that is not a violation of the plea agreement, and

13 it will not give you a basis to withdraw your guilty plea.  Do you

14 understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Now, normally a defendant in a criminal case

17 has the right to appeal the sentence imposed on her, but if you

18 look at paragraph 5 of your plea agreement, this is on page 3, the

19 second sentence, which begins with the word "nonetheless," as part

20 of this plea agreement, you are knowingly waiving -- again that

21 same word, which means giving up -- your right to appeal the

22 conviction, and you're also giving up your right to appeal any

23 sentence as long as the sentence does not exceed the statutory

24 maximum.

25             That means as long as the Court does not sentence you to

1  more than five years in prison followed by three years of

2  supervised release and the fine does not exceed one of those two

3  factors that I mentioned to you earlier and the special assessment

4  is not greater than $100, you cannot appeal the sentence.

5            Do you understand that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Now, in exchange for your guilty plea today,

8  the government has agreed that it will provide you with what is

9  called limited immunity from further prosecution.  This is in

10 paragraph 10.  And I want you to understand that I don't agree and

11 I don't think as a matter of law that everything that's in

12 paragraph 10 is enforceable.

13           I don't find that the Fraud Section of the Criminal

14 Division can bind -- I find that if a section of a division of the

15 Department of Justice makes a commitment, it's going to bind the

16 whole Criminal Division.  I may be wrong on that, but that's my

17 view of what the law would, would ultimately come out if that were

18 ever contested.

19           U.S. attorneys, however, cannot bind other U.S.

20 attorneys, and so in this case, I believe only the United States

21 Attorney's Office for the Eastern District of Virginia has

22 committed to this plea agreement, no other U.S. attorney.  Is that

23 correct?  I want to make sure, because there have been some other

24 plea agreements where other U.S. Attorney's Offices have been

25 involved.

1          MR. ZINK:  That's correct, Your Honor.

2          THE COURT:  All right.  That means that the authorities

3    in Alabama or Georgia or Florida could still prosecute you for

4    activities related to this case.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  In addition, it's quite clear

7    that none of the civil enforcement agencies are bound by this plea

8    agreement, and that means the Civil Division of the Department of

9    Justice could still come after you, the SEC can still bring

10   proceedings, so you still have a lot of civil exposure.  Do you

11   understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  You have also agreed as part of

14   this plea agreement to the entry of an order of prohibition.  This

15   is in paragraph 17, and that's one of the serious side effects of

16   this conviction, that you have agreed to this prohibition order

17   from both the Federal -- under both the Federal Deposit Insurance

18   Act and also from the Office of Thrift Supervision, and the result

19   of those orders is that you're going to be significantly limited

20   in being able to ever work again in the financial industry.

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And you've discussed that thoroughly with

24   your counsel?

25         THE DEFENDANT:  Yes.

1          THE COURT:  All right.  You have agreed in paragraph 11

2   of the plea agreement to cooperate in this matter with the

3   government, and that cooperation is described in subparagraphs a

4   through f but includes among other things your testifying

5   completely and truthfully as a witness in any trials, grand

6   juries, or other proceedings; your being available for debriefings

7   and pretrial conferences; and your providing documents, records,

8   and other evidence to the government at its request.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  The government has agreed in paragraph 12

12   that it will not use against you either to increase your sentence

13   or to bring a new prosecution any completely truthful information

14   you provided under paragraph 11.  Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Now, most defendants who cooperate with the

17   government do so with the hope that the cooperation will result in

18   some benefit in terms of a sentence, and that issue is discussed

19   in paragraph 15 of your plea agreement.  There are two ways in

20   which cooperation can be recognized.  The first would be if the

21   government either before or at the time of the sentencing hearing

22   files a motion under 5K1.1 of the guidelines.  That kind of a

23   motion asks the Court to sentence a defendant below the guideline

24   range because of that defendant's substantial cooperation with the

25   government.

1          The other type of motion that can be filed is a Rule

2     35(b) motion, and that motion is filed after a person has been

3     sentenced, so usually the person is now in custody serving the

4     sentence, and the government will ask the Court to reduce the

5     sentence because of the person's cooperation.

6          What paragraph 15 makes clear is that the government has

7     not promised or guaranteed you that it will file either or both of

8     those motions and that, in fact, even if you've talked with the

9     agents, even if you testified at trial, if for some reason they

10    determine that they're not going to make the motion, that is not a

11    violation of the plea agreement, and it would not give you a basis

12    to withdraw your guilty plea.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Moreover, even if the government were to

16    file one of those motions, the Court is not bound to grant that

17    motion under the plea agreement, and that means, for example,

18    let's say the government filed a Rule 35(b) motion and they asked

19    the Court to reduce your sentence by three-quarters, by 75

20    percent, and I found that only a 10 percent reduction was

21    appropriate.  That decision would not violate the plea agreement,

22    and it would not give you a basis to withdraw your guilty plea.

23         Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Now, have you had enough time -- oh, I

1  should mention to you there is also forfeiture provisions in this

2  plea agreement, and those are listed in paragraphs 18, 19, and 20.

3  Persons who obtain assets, either money or material property,

4  through illegal activity often have to forfeit that money and

5  those assets to the government, and what you've agreed to in

6  paragraphs 18, 19, and 20 is basically to assist the government in

7  identifying any such assets and then agreeing to their forfeiture.

8           Do you understand that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Now, have you had enough time to

11  thoroughly discuss everything you know about this conspiracy with

12  your counsel?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And have they discussed with you the nature

15  of the conspiracy charge and any ways in which you could possibly

16  defend yourself against the charge if you chose to go to trial?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Are you fully satisfied with the way your

19  lawyers have worked for you in this case?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And do you understand you still at this

22  moment have a right to plead not guilty and to go to trial on the

23  charge?

24          THE DEFENDANT:  Yes.

25          THE COURT:  If you did go to trial, then the burden

1   would be on the government to prove you guilty, and that burden is

2   a burden of proof beyond a reasonable doubt.  To meet that burden,

3   the government must prove each and every one of the essential

4   elements of the offense beyond a reasonable doubt.

5          So specifically, they have to prove that there was, in

6   fact, a conspiracy beginning on or about the year 2002 and

7   continuing through August of 2009.  A conspiracy is basically an

8   agreement between two or more people to do something the law

9   forbids.

10          They have to then be able to prove that the object of

11   the conspiracy was wire fraud, bank fraud, and/or securities

12   fraud.  They don't actually have to prove all three, but at least

13   one of those objects they'd have to prove, because that's the

14   conspiracy they've alleged here.

15          Then they have to prove that during the life of the

16   conspiracy, you knowingly and intentionally, and that means not by

17   an accident or mistake or some other innocent reason, became

18   involved in the activities of the conspiracy.

19          Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  They must also prove that at least one

22   member of the conspiracy, it doesn't even have to be you, but at

23   least one member has to commit one of the overt acts named in the

24   information.  In this case, as I mentioned to you earlier, it's

25   alleged that you were involved on January 6, 2009, with this wire

1   transfer of 66 million and change, but they'd have to prove that

2   beyond a reasonable doubt.

3            Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And lastly, they have to prove that there

6   was some connection between the activities of the conspiracy and

7   this district.  Do you -- to establish venue.  Do you understand

8   that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Now, if you pled not guilty and chose to go

11  to trial, there are certain rights and protections you would have

12  at trial that you essentially give up by pleading guilty.  First

13  of all, at trial you could see all of the government's witnesses

14  and evidence and have it tested through the cross-examination and

15  questions of your lawyers.  Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  You could ask the Court to issue subpoenas

18  that would require the presence of either witnesses or physical

19  evidence at the courthouse for you to use in your defense.  Do you

20  understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  You could testify as a witness at trial.  Do

23  you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  You could also invoke your Fifth Amendment

1  right to remain silent, and if you chose not to say anything at

2  trial, that silence could not be used as any evidence of guilt.

3  Do you understand that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  You would have the right, of course, to

6  counsel throughout your trial, and if you could not afford to pay

7  for trial counsel, we would make sure you had a lawyer at

8  taxpayers' expense.  Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Your case could be tried either by a judge

11  sitting alone, which is called a bench trial, or you could have a

12  trial by jury, in which case again a group of 12 citizens would

13  randomly be brought to court.  Twelve of them would be selected to

14  hear the case.

15          Now, it doesn't make any difference whether your case

16  was tried to a judge or to a jury.  In order for you to be found

17  guilty, the government would have to prove your guilt beyond a

18  reasonable doubt.  Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  If you continued with a not guilty plea,

21  your counsel could try to attack the prosecution's case, and there

22  are different ways in which that can be done.  If, for example,

23  you gave a statement or confession to the agents, they could probe

24  whether or not that could be suppressed because of any violations

25  of your Miranda rights or other defects in the way the confession

1  was taken.   If there were searches conducted of your bank records

2  or your home or your person, there may or may not be defects in

3  the way that was done.   There may or may not be other types of

4  issues they could raise.

5         What you need to understand is that by pleading guilty,

6  you're giving up those types of attacks or defenses to the

7  prosecution's case.   Do you understand that?

8         THE DEFENDANT:   Yes.

9         THE COURT:   And lastly, if you pled not guilty and went

10 to trial and you were found guilty at trial, you could appeal that

11 finding of guilt to a higher-level court.   Now again, under the

12 terms of your plea agreement as well as the case law, do you

13 understand that by pleading guilty, you're giving up your right to

14 appeal that finding of guilt?

15        THE DEFENDANT:   Yes.

16        THE COURT:   Other than the written plea agreement that's

17 in court today, has anybody promised or suggested to you that by

18 pleading guilty, you would get a lighter sentence or more

19 favorable treatment by the Court?

20        THE DEFENDANT:   No.

21        THE COURT:   Has anyone put any force or pressure on you

22 to plead guilty today?

23        THE DEFENDANT:   No.

24        THE COURT:   All right, Ms. Kelly, the last document we

25 need to go over is the ten-page written statement of facts.   I see

1   what appears to be your signature at the top of page 10.  Now, did

2   you, in fact, sign the statement of facts?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And before signing the statement, did you

5   read it over carefully?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And go over it thoroughly with counsel?

8              THE DEFENDANT:  Um-hum.

9              THE COURT:  Do you understand that by signing the

10  statement of facts, you are admitting to the truth of the 19

11  numbered paragraphs above your signature, and you are admitting

12  that if the case had gone to trial, the government could have

13  proven all of those facts beyond a reasonable doubt?  Do you

14  understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Is there anything whatsoever in this

17  statement of facts that you want to change or correct for the

18  record?  And it's not held against you.  If there's something in

19  here that you think is not quite accurate, you need to tell me

20  now.

21             THE DEFENDANT:  No.

22             THE COURT:  All right.  I'm not again going to go over

23  all of these details with you, but the main thing I want to make

24  sure you understand is that this statement of facts is among other

25  things what's going to be used by the Probation Office in the

1   presentence report, so if you come at the sentencing hearing and

2   say, "Well, that statement in paragraph 15 isn't accurate," or "I

3   don't agree with that," that's a problem.  So again, is there

4   anything you want to correct in this statement of facts?

5           THE DEFENDANT:  No.

6           THE COURT:  All right.

7           MR. YAMAMOTO:  Your Honor, just for the record, there

8   are facts in there that she may not be aware of that the

9   government's aware of that she didn't take part in, so --

10          THE COURT:  But by signing the statement of facts,

11  you're not contesting, in other words, part of that is you're

12  admitting that those representations by the government could be

13  proven beyond a reasonable doubt, and you're not going to step

14  away from that.

15          MR. YAMAMOTO:  Correct, Your Honor.

16          THE COURT:  Ms. Kelly, is that correct?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  The main -- the essence of this

19  is were you aware of while you were working at Colonial Bank, of

20  some of the financial problems involved with these transactions?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  And how were you made aware of

23  that?

24          THE DEFENDANT:  I was involved.

25          THE COURT:  You were involved, all right.

1          Now, do you understand that if the Court accepts your

2   guilty plea today, there will be no further trial of this issue,

3   and you will be found guilty of this conspiracy?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you claim in any respect you are innocent

6   of the conspiracy charge?

7          THE DEFENDANT:  No.

8          THE COURT:  How then do you plead?

9          THE DEFENDANT:  Guilty.

10         THE COURT:  All right.  Counsel, have you both had

11  enough time to go over this plea with Ms. Kelly?

12         MR. YAMAMOTO:  Yes, Your Honor.

13         MR. LEVENTHAL:  Yes.

14         THE COURT:  Are you each satisfied that Ms. Kelly is

15  entering her plea in a knowing and voluntary fashion?

16         MR. LEVENTHAL:  Yes, Your Honor.

17         MR. YAMAMOTO:  Yes, Your Honor.

18         THE COURT:  And, counsel, from your review of the

19  evidence -- and I assume you've had fair access to discovery in

20  this case?  Is that the case?

21         MR. LEVENTHAL:  We've had enough access to the events at

22  Colonial Bank that we understand what the government could prove,

23  and that's been fully discussed with Ms. Kelly.

24         THE COURT:  All right.  So you're satisfied that the

25  evidence in this record is more than enough upon which to find the

1  defendant guilty?

2          MR. LEVENTHAL:  I am, Your Honor.

3          THE COURT:  All right.  Ms. Kelly, based on these

4  answers to the Court's questions, the Court finds that you've

5  entered your guilty plea in a knowing and voluntary fashion, with

6  the full advice of counsel, and that the written statement of

7  facts and your oral admissions in court today are more than enough

8  evidence upon which to find you guilty beyond a reasonable doubt.

9          We need to set this case -- so the plea is accepted, and

10 you're found guilty.

11         We need to set this case for sentencing, and I believe

12 we need to set a bond in this case.  So let's get a sentencing

13 date first.  We can do this June 17.  Does that work for your

14 calendars?

15         MR. ZINK:  It works for the government, Your Honor.

16         MR. LEVENTHAL:  Your Honor, my calendar is in my phone.

17 My phone, of course, is not in the courthouse, but with the

18 Court's approval, if I could respond to Mr. Yamamoto by the end of

19 the day if there's a problem?

20         THE COURT:  All right.  Well, I'm going to put it down

21 for 9:00 on June 17 at this point.

22         MR. LEVENTHAL:  What day of the week is that?

23         THE COURT:  It's a Friday.  We always sentence on

24 Fridays.

25         MR. LEVENTHAL:  Thank you.

1            THE COURT:  Ms. Kelly, you live in Florida.  Is it the

2    Middle District of Florida where you are?

3            THE DEFENDANT:  Yes, in Orlando.

4            THE COURT:  In Orlando?

5            THE DEFENDANT:  Um-hum.

6            THE COURT:  Do you have a passport with you today?

7            THE DEFENDANT:  Yes.

8            MR. YAMAMOTO:  I have it, Your Honor.

9            THE COURT:  All right.  Mr. Yamamoto, if you'd give it

10   to Mr. Wood, please?

11           MR. YAMAMOTO:  Your Honor, I'd ask that I be permitted

12   to hold the passport.  It's just easier for everybody that way.

13   It doesn't get turned in to the State Department.

14           THE COURT:  Well, I think I've directed the Pretrial

15   Office in my cases not to be turning it in anyplace, because there

16   have been problems with defendants not getting their passports

17   back.

18           MR. YAMAMOTO:  Correct.  They don't get their passports

19   back.

20           THE COURT:  And we're not seizing passports as a part of

21   the sentence in this case.  So is it your experience that Pretrial

22   is still taking them -- I mean, sending them to the State

23   Department?

24           MR. YAMAMOTO:  Yes.  They send all of them to the State

25   Department unless the Court orders that they hold them.  So I

1    would hold it up here.  She doesn't have access to it down there

2    then.

3             THE COURT:  All right.  Well, because you're well known

4    to the Court, Mr. Yamamoto, I have no problem with that, but I'll

5    need to put that on the bond papers, so hold on a second.

6             MR. YAMAMOTO:  That's fine, Your Honor.

7             THE COURT:  Do you have any need, Ms. Kelly -- other

8    than coming up here for court proceedings, do you have any need to

9    be outside of the Orlando metropolitan area?

10            THE DEFENDANT:  My family lives around the Tampa area,

11   so that may be the only need, to go over there.

12            THE COURT:  Is Tampa still within the Middle District?

13            MR. LEVENTHAL:  That's within the Middle District of

14   Florida, Your Honor.

15            THE COURT:  Are you currently working?

16            THE DEFENDANT:  No.

17            MR. YAMAMOTO:  She resigned last week, Your Honor.

18            THE COURT:  All right.  Are you seeking employment?

19            THE DEFENDANT:  I will -- I just resigned last week, so

20   I haven't had time to start looking yet.

21            THE COURT:  All right.  All right, Ms. Kelly, I'm going

22   to release you on a $50,000 personal recognizance bond.  That's

23   what we've been doing in these other cases.

24            MR. ZINK:  That's fair, Your Honor, yes.

25            THE COURT:  All right.  With the following terms and

1   conditions:  First of all, you must be of uniform good behavior.

2   That means you cannot violate any federal, state, or local laws

3   while on bond.  Do you understand that?

4           THE DEFENDANT:  Yes.

5           THE COURT:  That includes traffic laws.  Do you

6   understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Secondly, you have to comply with all the

9   conditions that will be spelled out in the order setting

10  conditions of release, and they'll also be explained to you by the

11  Pretrial Services Office.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  As special conditions, you must reappear in

14  this court on Friday, June 17, at 9 a.m. for sentencing.  Do you

15  understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You will have to post an unsecured bond in

18  the amount of $50,000.  That means if for any reason you violate

19  the bond, the government would have a judgment against you in that

20  amount.  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  You are to actively seek employment.  Do you

23  understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  You must continue to reside at

1    your current address, and you are not allowed to depart the Middle

2    District of Florida without prior approval either of Pretrial

3    Services or the Court.  Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Even for coming back for your sentencing

6    hearing, you need to let Pretrial know when you're leaving

7    Florida, where you'll be staying up here, that sort of thing.  Do

8    you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  And if you're coming up here to attend the

11   trial, to be debriefed, again, all those things need to be worked

12   out with Pretrial in advance.  Do you understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  All right.  You are not to have any contact

15   with any of the other participants in this case unless in the

16   presence of counsel.  You are not prohibited from speaking with

17   counsel or anybody else who's involved in this case.  I recommend

18   you discuss that issue with your attorneys.  You have a right not

19   to talk to them, but you have a right to talk to them.  However, I

20   don't want you having contact with any of those people unless you

21   have an attorney present.

22           Do you understand that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And if they should contact you, I mean, if

25   you should be getting an e-mail or phone call or any kind of

1   contact by one of the codefendants, you need to let your counsel

2   know that right away.  Do you understand that?

3                   THE DEFENDANT:  Yes.

4                   THE COURT:  Rather than responding back to them

5   directly.

6                   THE DEFENDANT:  Um-hum.

7                   THE COURT:  You must report on a regular basis to both

8   Pretrial Services and the U.S. Probation Office.  Do you

9   understand that?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  And they'll advise you when they need to see

12  you.

13                  You cannot possess a firearm, destructive device, or

14  other dangerous weapon, because you are now a convicted felon.  Do

15  you understand that?

16                  THE DEFENDANT:  Yes.

17                  THE COURT:  Are there any firearms in your residence?

18                  THE DEFENDANT:  Not that I'm aware of.  My husband may

19  have one, but I'll check with him.

20                  THE COURT:  Well, he needs to have it under lock and key

21  such that you couldn't get access to it.  Do you understand that?

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  You may not use alcohol to excess or use or

24  possess any illegal drugs.  Do you understand that?

25                  THE DEFENDANT:  Yes.

1          THE COURT:  You've surrendered your passport to

2    Mr. Yamamoto.  Do you understand you may not obtain a passport or

3    other travel documents while on bond?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And you have to advise any employer of this

6    conviction.  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Are there any other conditions of release

9    the government is requesting in this case?

10          MR. ZINK:  No, Your Honor.

11          THE COURT:  All right.

12          MR. LEVENTHAL:  Your Honor?

13          THE COURT:  Yes.

14          MR. LEVENTHAL:  There is -- there's already pre-planned

15    travel back to this district next week for Mrs. Kelly, next

16    Wednesday for several days.  I don't know how quick she can get

17    approval from Pretrial Services.

18          THE COURT:  Is Pretrial in here this morning?

19          THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor.

20          THE COURT:  All right.  I don't want to have to write

21    all this stuff in.  Definitely for -- what I recommend is that as

22    long as you're notified, as long as you know what days Ms. Kelly

23    is going to be up here, because I expect since there's a trial

24    date looming, she's going to be up here a great deal preparing for

25    trial, I don't want her to have to get tied down running back and

1   forth.   So she has blanket permission from this Court to be up

2   here when needed for debriefings and for the trial, all right?

3                  THE PRETRIAL SERVICES OFFICER:  All right.

4                  THE COURT:  You have that orally.  That's -- all right?

5                  THE PRETRIAL SERVICES OFFICER:  Yes.

6                  THE COURT:  So work that out with Pretrial.  There

7   shouldn't be any trouble with that, all right?

8                  MR. YAMAMOTO:  Yes, Your Honor.

9                  MR. LEVENTHAL:  Thank you, Your Honor.

10                 THE COURT:  Anything else?

11                 MR. LEVENTHAL:  No, Your Honor.

12                 MR. YAMAMOTO:  No.

13                 THE COURT:  No?  All right.

14                 Now, when you leave court today, I'm going to have --

15  you'll get the bond papers here in a second.  You need to make

16  sure -- Mr. Yamamoto, you know the drill.

17                 MR. YAMAMOTO:  Yes, Your Honor.

18                 THE COURT:  Your client needs to go to the Marshals

19  Service for processing, she needs to check in with Pretrial

20  Services, she needs to sign the bond papers down at the Clerk's

21  Office, and then Probation.  So there are four stops, all right?

22                 MR. YAMAMOTO:  Yes, Your Honor.

23                 THE COURT:  All right, you're all free to go at this

24  time.  Thank you.

25                 MR. YAMAMOTO:  Thank you, Your Honor.

1          MR. LEVENTHAL:  Thank you, Your Honor.

2                          (Which were all the proceedings

3                           had at this time.)

4

5                    CERTIFICATE OF THE REPORTER

6      I certify that the foregoing is a correct transcript of the

7  record of proceedings in the above-entitled matter.

8

9

10                              _____
                                        /s/
11                                Anneliese J. Thomson

12

13

14

15

16

17

18

19

20

21

22

23

24

25